IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

KEVIN TODD MOBLEY,                    )
                                     )
                Plaintiff,           )
                                     )
vs.                                  )        Case No. 11-1293-C
                                     )
AMERICAN HOME ASSURANCE              )
CO.,                                 )
                                     )
                Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Mobley asserts the present bad faith claim against Defendant
American Home Assurance Company ("AHA") for its alleged wrongful refusal to authorize
medical treatment as ordered by the Oklahoma Workers' Compensation Court. Plaintiff
seeks a summary judgment ruling on his bad faith claim and asks that damages be determined
at trial. Defendant responded to Plaintiff's Motion and also filed a counter Motion for
Summary Judgment arguing that it, not Plaintiff, was entitled to judgment.[1]

## I. BACKGROUND

On June 3, 2008, Plaintiff Kevin Mobley injured his back during his employment with
Noble Contractors, LLC. Thereafter, Plaintiff filed a workers' compensation claim with the

---

[1] It should be noted here that Defendant's failure to file a separate motion for summary
judgment is in violation of the local rules. LCvR7.1(c) ("A response to a motion may not also
include a motion or a cross-motion made by the responding party."). Combined motions are
generally stricken. However, because the deadline for filing dispositive motions has passed and
Plaintiff's response was filed before the Court had an opportunity to strike the motion, the Court
will consider Defendant's Motion despite this shortcoming. (See Order, Dkt. No. 10.)

Oklahoma Workers' Compensation Court ("WCC").  On October 31, 2008, WCC Judge Foster found that Plaintiff had sustained a cervical spine and thoracic spine injury during his employment and ordered Noble Contractors or Defendant AHA, Noble Contractors' workers' compensation carrier, to pay for Plaintiff's reasonable and necessary medical care. (Pl.'s Br., Dkt. No. 11 Ex. 1.)  Defendant AHA had 20 days from the issuance date to comply with this order.  (Id.)

Thereafter, on April 26, 2010, Judge Foster found that Plaintiff sustained a lumbar spine injury and ordered Defendant AHA to pay for reasonable and necessary medical expenses to remedy that injury.  (Id. Ex. 2.)  Again, Judge Foster ordered Defendant AHA to comply with the order within 20 days of its issuance.  (Id. (conducting a hearing on April 21 and issuing an order on April 26).)  Defendant AHA appealed the April 26 Order two days later, on April 28.  (Id. at 3.)  And, on July 15, 2010, a three-judge panel for the WCC affirmed Judge Foster's findings.  (Id. Ex. 3.)  After the July 15 en banc order, David Reid, Noble Contractors' attorney, verbally authorized Dr. Nees to treat Plaintiff during a conversation with Plaintiff's workers' compensation attorney, Jack Tracy. (Def.'s Br., Dkt. No. 24, at 4.)

On August 6, 2010, Plaintiff's attorney sent a letter to Defendant stating that "he and David [Reid] agreed at Court to Dr. Nees as the treating physician. . . .  It is our understanding the appointment was not authorized due to the filing of the appeal.  Can we get him an appointment authorized and rescheduled with Dr. Nees without the necessity of returning to the Court?"  (Pl.'s Br., Dkt. No. 37 Ex. 4.)

2

On September 3, 2010, Plaintiff's attorney sent another letter to Defendant, wherein Plaintiff's attorney stated that he had "not heard from you or the adjuster in regard to an appointment being scheduled for Mr. Mobley with Dr. Jeffrey Nees" (Pl.'s Br., Dkt. No. 37 Ex. 5), and asked again for allowance to schedule an appointment, to which Defendant responded in the affirmative on September 22.  (Def.'s Br., Dkt. No. 24 Ex. 12.)  In this letter, Defendant's counsel again expressed its authorization of Dr. Nees and also stated that "it is necessary for [Mr. Tracy] to contact Dr. Nees' office to arrange the date, time, etc.  At that point the doctor's office will contact our client regarding authorization."  (Id.)  On October 1, 2010, Plaintiff's attorney first contacted Dr. Nees's office to schedule an appointment.  (Id. Ex. 7, at 7.)  Thereafter, Mr. Tracy stated in a letter to Defendant that he would send Mr. Mobley's medical records to Dr. Nees as well as the claims adjuster's telephone number.

After the July 15 affirmation, Plaintiff's counsel and Dr. Nees's staff attempted to contact the claim adjuster assigned to Plaintiff's workers' compensation claim.  On October 27, 2010, Joanna West, one of Dr. Nees's staff, sent a fax to Plaintiff's attorney stating that "[she] cannot get a hold of Tyler Dawson [the claims adjuster] at the 214-932-2714 [number]."  (Pl.'s Br., Dkt. No. 37 Ex. 11.)  Ms. West goes on to state that the above number "[is] always busy[, and that she] really need[s] to get an auth for a new MRI for this patient before we see him on 11-8-10," and asks Mr. Tracy's staff if they "have any other contact info for his w/c adjuster?"  (Id.)  It was later discovered, however, that the phone number

used by Plaintiff's counsel and given to Dr. Nees's staff was no longer operable. Accordingly, the adjuster was not reached for a period of time.

On November 8, 2010, Dr. Nees examined Plaintiff.  Seven days prior to this examination, Defendant deposed Plaintiff about a possible intervening accident that occurred in September of 2010, wherein Plaintiff sought emergency health care after feeling a pop in his back while standing from being seated.  On November 17, 2010, Plaintiff filed a Form 13 requesting that the WCC order an MRI by Dr. Nees.  (Pl.'s Br., Dkt. No. 37 Ex. 18.)

On January 25, 2011, the parties again appeared before Judge Foster at a WCC hearing regarding Defendant's request that an independent medical examiner ("IME") investigate the possible intervening accident that occurred in September of 2010 and Plaintiff's request for enforcement of medical treatment requested by Dr. Nees.  (Pl.'s Br., Dkt. No. 11 Ex. 5, at 4.)  In the transcript of this hearing, Judge Foster denied Defendant's request for an IME and stated that

> there was no intervening injury that was the result of claimant's activities.  If there was any intervening injury [it] result[ed] in an unreasonable and bad faith delay in treatment provided by the insurance company, that the order of 4/26/10 has not been complied with.
>
> The claimant has sat without medical treatment for five months, and now we have an intervening injury allegation as a result of the insurance—in respondent's insurance coverage, failing to comply with this Court's prior order.  So any intervening injury would also be the responsibility of the respondent's insurance carrier.
>
> And in the event, this Court is going to order that all reasonable and necessary medical treatment be provided as soon as possible to the claimant.  All TTD shall continue, and surgery is authorized in the event Dr. Nees finds, after the MRI, that it's required.

4

> And in the event that the insurance company does not comply with this
> Court's order, as it did not with the last order, the Court would be more than
> happy to entertain sanctions against such insurance carrier.

(Pl.'s Br., Dkt. No. 11 Ex. 5, at 15-16.)  Defendant's counsel went on to point out to Judge

Foster that the en banc ruling was not issued until July 15—not quite three months after the

April 26 order—to which Judge Foster responded by pointing out the two-month delay after

the appeal and the lack of evidence that this delay was caused by anything other than

Defendant's delinquency.  At the time of this hearing, the parties were unaware that both

Plaintiff's attorney and Dr. Nees's office staff were calling an inoperable phone number.

Defendant did not appeal the January 25 findings.

## II.  STANDARD OF REVIEW

Summary judgment is proper if the moving party shows that there is "no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "Under the summary judgment standard, a mere factual dispute will

not preclude summary judgment; instead there must be a genuine issue of material fact."

Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the

basis for its motion, and identifying those portions of "'the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any,'" that

demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986) (citation omitted).  A fact is material if it affects the disposition of the

substantive claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A court

considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

If a party does not sufficiently support its own asserted facts or address the other party's asserted fact, a court may allow "opportunity to properly support or address the fact . . . consider the fact undisputed for purposes of the motion . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . or issue any other appropriate order." Fed. R. Civ. P. 56(e). While addressed in the same Order, Plaintiff's and Defendant's motions will be considered separately by this Court carefully drawing all reasonable inferences against the party whose motion is then under consideration.

### III.  DISCUSSION

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." Christian v. Am. Home Assurance Co., 1977 OK 141, ¶ 25, 577 P.2d 899, 904. To establish a bad faith claim, an insured "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993).

Generally, "[a] common law tort action exists for an insurance carrier's bad faith in refusing to pay a workers' compensation award." Sizemore v. Cont'l Cas. Co., 2006 OK 36,

¶ 28, 142 P.3d 47, 54.   The bad faith conduct by a workers' compensation insurer is measured by the same standard as other insurers' bad faith conduct.  Id. ¶ 25, 142 P.2d at 54. "[T]he minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award against said insurer."  Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶ 28, 121 P.3d 1080, 1094.  A bad faith claim against a workers' compensation carrier, however, can only arise regarding conduct after an award against the employer.  Anderson v. U.S. Fid. & Guar. Co., 1997 OK 124, ¶ 11, 948 P.2d 1216, 1218.

The insurer does not breach this duty by simply "refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'"  Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989) (quoting Manis v. Hartford Fire Ins. Co., 1984 OK 25, ¶ 12, 681 P.2d 760, 762).  If the insurer had a "good faith belief, *at the time its performance was requested*, that it had a justifiable reason for withholding payment under the policy," then it will not be liable.  Buzzard v. McDanel, 1987 OK 28, ¶ 10, 736 P.2d 157, 159.  Regarding bad faith claims at the summary judgment stage, the Tenth Circuit stated the following:

> On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious.  Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

7

Oulds, 6 F.3d at 1436-37 (citations omitted).

### A.  Plaintiff's Motion for Summary Judgment

Plaintiff argues that he is entitled to summary judgment on his bad faith claim because the WCC's ruling that the Defendant acted "in an unreasonable and bad faith delay in [providing] treatment" is a binding ruling regarding the claims before this Court.  The WCC, however, does not have jurisdiction to find bad faith, and, therefore, the WCC Judge's statement that "[i]f there was any intervening injury [it was a] result [of] an unreasonable and bad faith delay in treatment provided by the insurance company" is not a binding ruling regarding Plaintiff's present claim.  (Pl.'s Br. Dkt. No. 37 Ex. 21, at 16 (emphasis added)); Hefley v. Neely Ins. Agency, Inc., 1998 OK 12, ¶ 11, 954 P.2d 135, 138 ("The Workers' Compensation Court has authority to interpret and construe insurance policies when it is necessary to do so when determining the insured's liability to an injured employee. However, the court lacks the power possessed by courts of general jurisdiction to decide tort and general contract matters.").  Because the WCC's jurisdiction is limited and the parties did not have a "full and fair opportunity to litigate the claim," Plaintiff's argument is unpersuasive.  Nwosun v. Gen. Mills Rests., Inc., 124 F.3d 1255, 1257 (10th Cir. 1997). Accordingly, Plaintiff is not entitled to summary judgment on his bad faith claim.

### B.  Defendant's Motion for Summary Judgment

Defendant also moves for summary judgment on Plaintiff's claim arguing that it has discharged its duty under the WCC order and authorized treatment and that Plaintiff is unable to provide sufficient facts to survive summary judgment.  Defendant also argues that Plaintiff

has failed to obtain the requisite certification from the WCC to assert his claim.  Because the Court finds the Plaintiff's bad faith claim cannot survive the present Motion, whether Plaintiff obtained the requisite certification is moot.

### 1.  Bad Faith Claim

Defendant argues that it actually gave authorization for Plaintiff to be treated by Dr. Nees:  After the July 15 en banc order, David Reid verbally authorized Dr. Nees to treat Plaintiff during a conversation with Plaintiff's workers' compensation attorney, Jack Tracy; and, on September 22, 2010, Defendant's counsel sent Mr. Tracy a letter again expressing its authorization of Dr. Nees.  (Def.'s Br., Dkt. No. 24, at 4; id. Ex. 12.)  Mr. Tracy admits that Mr. Reid authorized treatment during this conversation; Mr. Tracy also admits that he cannot recall relaying this authorization to Dr. Nees's office.  (Pl.'s Br., Dkt. No. 37 Ex. 22, at 6, 17.)

As evidence that Defendant did not authorize treatment, Plaintiff points to the fax sent on October 27, 2010, from Dr. Nees's office wherein Ms. West asks Plaintiff's counsel for more contact information because she was unable to reach the claims adjuster at the telephone number provided by Plaintiff.  (Id.)  In further support of his argument, Plaintiff cites the two letters written by his attorney where he asks for authorization of treatment by Dr. Nees, to which Defendant responded in the affirmative on September 22.

Plaintiff does not contest Ms. West's testimony that the WCC order was all the authorization needed or that if Mr. Tracy communicated to Dr. Nees's office that the respondent authorized Dr. Nees to provide reasonable and necessary care that too would be

sufficient.  Accordingly, the question of whether Mr. Tracy actually communicated this authorization to Dr. Nees does not create a factual dispute regarding Defendant's prior authorization of Dr. Nees, which both parties agreed occurred.  Plaintiff argues that Defendant was required to communicate directly with Dr. Nees's office, but provides no support for this contention beyond Mr. Tracy's deposition testimony.  (See WCC Order, Dkt. No. 11 Ex. 2 (ordering "respondent or insurance carrier [to] furnish claimant with reasonable and necessary medical care and treatment, for correction of claimant's condition, and said treatment is to be rendered by a physician to be selected by respondent.").)

Additionally, Plaintiff argues that instead of authorizing an MRI and complying with the WCC order, Defendant demanded that Mr. Mobley be deposed.  Defendant admits that it sought to and did depose Mr. Mobley, but contests that this deposition in any way interfered with its obligations pursuant to Mr. Mobley's other treatment.  Rather, Defendant sought to depose Mr. Mobley about a possible intervening injury in preparation for the WCC hearing Defendant requested regarding a possible appointment of an independent medical examiner.[2]  Indeed, the only evidence Plaintiff cites as support for this contention is a letter from Defendant's attorney regarding the scheduling of Mr. Mobley's deposition.  (Pl.'s Br., Dkt. No. 37, at 3 ("[T]he respondent, [] instead of complying with the order of the Court on April 26, 2010, [] demanded the deposition of Kevin Mobley.").)  But Defendant neither

---

[2]  Under 85 Okla. Stat. § 329(B), the WCC may "at any time, regardless of the date of injury, [] appoint an independent medical examiner to assist in determining any issue before the Court.  In the event surgery is recommended by a treating physician, upon request of the employer, an independent medical examiner shall be appointed by the Court to determine the reasonableness and necessity of the recommended surgery."

mentions Mr. Mobley's ongoing treatment nor indicates that his treatment is affected by its investigation into a possible intervening injury.  (Id. Ex. 8.)

Plaintiff has not shown any evidence supporting the culpability necessary on Defendant's part to survive Defendant's Motion:  Defendant paid for Plaintiff's visit to Dr. Nees on November 8 and all visits thereafter—in addition to paying the ordered temporary total disability benefits since 2008 and Plaintiff's September 6, 2010, hospital bills.  (See Def.'s Br., Dkt. No. 24 Ex. 13, at 2-3; Badillo, 2005 OK ¶ 28, 121 P.3d at1094.)  None of which Plaintiff disputes.

Neither Plaintiff's counsel nor anyone from Dr. Nees's office attempted to contact Defendant by mail, fax, or 800 number regarding Plaintiff's appointment.[3]  (Def.'s Br., Dkt. No. 24 Ex. 7, at 7.)  The out-dated number Plaintiff's counsel gave to Dr. Nees's office—the 214-932-2714 number—became inoperable in December of 2008, but Plaintiff's counsel successfully called the adjuster in October of 2009, almost a year after the number had changed.  (Def.'s Br., Dkt. No. 24 Ex. 13, at 2; id. Ex. 25.)  Accordingly, Defendant did not withhold information regarding the phone number change.  Without more than speculation, an inability to reach the claims adjuster for a period of time due to use of an incorrect number does not indicate anything more than negligence.  Even construing all inferences in

---

[3] An 800 number was printed on Defendant's checks, but those checks were sent directly to Plaintiff—not Plaintiff's counsel, who had not seen any of those checks during the time period at issue.  (Def.'s Br., Dkt. No. 24, at 8.)

11

Plaintiff's favor, he has not established that material facts remain disputed regarding his bad faith claim in order to survive Defendant's Motion.

## IV.  CONCLUSION

For the above-stated reasons, Plaintiff's Motion for Summary Judgment (Dkt. No. 11) is DENIED; Defendant's Motion for Summary Judgment (Dkt. No. 24) is GRANTED.  A Judgment will enter accordingly. All other pending motions are stricken as moot.

IT IS SO ORDERED this 24th day of July, 2012.


ROBIN J. CAUTHRON
United States District Judge